UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GERRY LEE PARKER,

                    Petitioner,

v.                                    Case No. 3:09-cv-1203-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner Gerry Lee Parker initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) with exhibits (Pet. Ex.) under 28 U.S.C. § 2254 on December 10, 2009.  Petitioner filed an Amended Petition (Doc. #5) on February 25, 2010.  Now proceeding on his Second Amended Petition (Doc. #24), filed March 18, 2011, Petitioner challenges a 1997 state court (Duval County, Florida) judgment of conviction for robbery with a weapon. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer in Response to Order to Show

Cause and Second Amended Petition for Writ of Habeas Corpus and Motion to Dismiss Second Amended Petition's Ground 9 as Untimely (Response) (Doc. #29) with exhibits (Resp. Ex.) (Doc. #14).  On May 14, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #8), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply.  Petitioner submitted a brief in reply on November 30, 2011.  See Petitioner's Reply to Respondents' Response to the Order Issued by This Court on March 28, 2011 (Reply) (Doc. #33).  In compliance with the Court's Order (Doc. #35), filed June 8, 2012, Respondents filed a supplemental response, and Petitioner replied. See Respondents' Answer to Ground 9 of Second Amended Petition (Doc. #36) (Supplemental Response), filed June 13, 2012; Petitioner's Reply to Respondents' Answer to Ground 9 (Doc. #37), filed August 13, 2012.  This case is ripe for review.

## II. Procedural History

On May 8, 1997, the State of Florida charged Gerry Parker with armed robbery with a firearm. Res. Ex. C at 7-8, Information. After jury selection, Parker proceeded to trial.  Resp. Ex. D, Transcript of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Parker guilty of robbery with a weapon.  Resp. Ex. C at 44, Verdict; Tr. at 250. On August 1, 1997, the trial court sentenced Parker, as a violent career criminal, to a term of life imprisonment.  Resp. Ex. C at 70-79, Judgment.  On September

2

12, 2000, the court entered a corrected judgment and resentenced Parker, as a habitual felony offender, to a term of thirty-five (35) years of imprisonment.  Resp. Ex. W at 93-98.

On appeal, Parker, through counsel, filed an Initial Brief, arguing that the trial court erred by failing to sustain his objections to impermissibly suggestive out-of-court identification procedures where those procedures tainted the victim's memory, and where the totality of the circumstances did not support such identification, thereby denying Parker due process of law, as guaranteed by the United States Constitution and the Constitution of the state of Florida.  Resp. Ex. E. The State filed an Answer Brief.  Resp. Ex. F.  On December 3, 1998, the appellate court affirmed Parker's conviction and sentence per curiam without issuing a written opinion, see Parker v. State, 727 So.2d 918 (Fla. 1st DCA 1998); Resp. Ex. G, and the mandate issued on December 21, 1998, see Resp. Ex. H.  Parker did not seek review in the United States Supreme Court.

On March 30, 1999, Parker filed his first pro se petition for writ of habeas corpus, asserting that appellate counsel was ineffective because she failed to raise the following issues on direct appeal: (1) the trial court erred in admitting the firearm into evidence; (2) the trial court erroneously allowed the evidence technician, a lay witness, to conduct an in-court demonstration and testify that the firing pin was in working order; (3) the

3

prosecutor, during closing arguments, misstated the law and the duty of the jury; (4) the trial judge sentenced Petitioner pursuant to an unconstitutional provision of Florida Statutes section 775.084; and (5) the trial judge erred when he denied the deliberating jury's request to read a witness's testimony without allowing defense counsel to argue the issue or object to his decision. Resp. Exs. I; J.  On May 3, 1999, the appellate court denied the petition on the merits.  Parker v. State, 740 So.2d 534 (Fla. 1st DCA 1999); Resp. Ex. K.  The court, on June 24, 1999, denied Parker's motion for certification.  Resp. Exs. L; M.

On September 3, 1999, Parker filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. O at 1-22.  He subsequently amended the motion on October 12, 1999, January 31, 2000, February 29, 2000, and June 19, 2000.  Resp. Ex. O Supp. 1-117.  In his requests for post conviction relief (Rule 3.850 motion), Parker asserted that the trial court erred by improperly instructing the jury concerning the lesser included offense of robbery with a weapon (ground one, part A); counsel (Assistant Public Defender Francis Shoemaker) was ineffective because he failed to object to the allegedly improper jury instruction pertaining to the lesser included offense of robbery with a weapon (ground one, part B); the trial judge committed fundamental error when he instructed the jurors that, rather than have portions of the trial testimony read to them

4

during deliberations, they had to rely upon their collective memories in determining a verdict (ground two, part A); counsel was ineffective because he failed to object to the court's instructions concerning questions the jurors had posed to the court (ground two, part B); and the prosecutor committed misconduct by using false testimony and making improper comments during closing arguments (ground three, part A).

Additionally, Parker asserted that counsel was ineffective because he failed to: object to the alleged prosecutorial misconduct (ground three, part B); request a Richardson[1] inquiry or object to the State's alleged discovery violation pertaining to the State's disclosure of Officer Freeman (ground four); pursue the issue of evidence tampering (ground five); call specific witnesses for impeachment purposes (ground six); properly advise Petitioner with respect to his right to testify on his own behalf (ground seven); file motions to suppress pertaining to a gun, sweatshirt, bank envelope, and Parker's arrest (ground eight); properly impeach the victim (ground nine); object to highly prejudicial hearsay testimony (ground ten); and demand disclosure of the police officer's notes that another officer used to make the police report (ground eleven).  Parker also claimed that the trial court committed fundamental error when it sentenced him as a violent career criminal and that counsel rendered ineffective assistance

---

[1] Richardson v. State, 246 So.2d 771 (Fla. 1971).

based upon that sentence (ground twelve); counsel was ineffective because he breached the attorney/client privilege of confidentiality and became an advocate for the State (grounds thirteen and fourteen); the trial court committed fundamental and constitutional error when it failed to make a proper, factual determination on the merits of his motion for new trial (ground fifteen, part A); and counsel was ineffective because he failed to obtain a proper, factual basis for the denial of his motions for new trial (ground fifteen, part B).

The court denied Parker's requests for post-conviction relief on July 11, 2000. Resp. Ex. O at 23-217. On September 15, 2000, the court denied his motion for rehearing. Id. at 218-37, 238. Parker appealed the denial of his Rule 3.850 motions and filed a brief. Resp. Ex. P. The State notified the court that it did not intend to file an answer brief. Resp. Ex. Q. On July 2, 2001, the appellate court affirmed the trial court's decision per curiam. Parker v. State, 793 So.2d 936 (Fla. 1st DCA 2001); Resp. Ex. R. The court denied Parker's motion for rehearing on August 13, 2001. Resp. Exs. S; T. The mandate issued on August 29, 2001. Resp. Ex. U.

On April 26, 2000, Parker, though counsel, filed his first Motion to Correct Sentencing Error pursuant to Florida Rule of Criminal Procedure 3.800(a), asserting that his violent career criminal sentence of life imprisonment was illegal. Resp. Ex. W at

85-88.  On September 12, 2000, the court granted Parker's motion and entered a corrected Judgment and Sentence, adjudicating him guilty of robbery with a weapon and sentencing him, as a habitual felony offender, to a term of thirty-five (35) years of imprisonment.  Resp. Ex. W at 93-98.  Upon Parker's appeal, the appellate court affirmed the trial court's decision per curiam on June 27, 2003.  Parker v. State, 852 So.2d 238 (Fla. 1st DCA 2003); Resp. Ex. DD.  The court denied his motion for rehearing on July 31, 2003.  Resp. Exs. EE; FF.  The mandate issued on August 18, 2003. Resp. Ex. GG.

On November 20, 2000, Parker filed his second pro se petition for writ of habeas corpus, asserting that appellate counsel was ineffective because she failed to raise the following issues on direct appeal: (1) the trial court abused its discretion in instructing the jury on an inapplicable lesser included offense; (2) trial counsel was ineffective because he failed to object to the erroneous jury instructions; (3) the trial court abused its discretion in instructing the jury that it was prohibited from reading back certain testimony to the jury; (4) counsel was ineffective because he failed to object to the court informing the jury that the court was prohibited from reading back testimony to the jury; (5) the prosecutor committed acts of misconduct; (6) counsel was ineffective because he failed to object to the prosecutor's misconduct; and (7) the trial court committed

7

fundamental and constitutional error when it failed to make a proper, factual determination on the merits of Parker's motion for new trial. Resp. Ex. II. On January 18, 2001, the appellate court denied the petition on the merits. _Parker v. State_, 781 So.2d 1088 (Fla. 1st DCA 2001); Resp. Ex. JJ.

On August 6, 2003, Parker filed a second _pro_ _se_ motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.   Resp. Ex. LL at 1-34.   He subsequently amended the motion on August 15, 2003, January 5, 2005, and April 17, 2005. _Id_. at 35-94.   In his requests for post conviction relief, Parker asserted that counsel was ineffective at the resentencing hearing. On April 26, 2006, the post conviction court denied Parker's motions, _see_ _id_. at 95-98, and later denied his motion for rehearing, _see_ _id_. at 99-105, 106.   Parker appealed, and the appellate court affirmed the trial court's decision per curiam on November 6, 2006, _see_ _Parker v. State_, 944 So.2d 355 (Fla. 1st DCA 2006); Resp. Ex. MM, and denied his motion for rehearing, _see_ Resp. Exs. NN; OO.   The mandate issued on December 27, 2006.   Resp. Ex. PP.

On February 19, 2007, Parker filed his third _pro_ _se_ petition for writ of habeas corpus, asserting that appellate counsel was ineffective because she failed to file a motion to correct illegal sentence on the ground that Parker was improperly resentenced by a successor judge without a showing of necessity.   Resp. Ex. RR.   On

March 8, 2007, the appellate court denied the petition on the merits. <u>Parker v. State</u>, 951 So.2d 52 (Fla. 1st DCA 2007); Resp. Ex. SS.

On March 21, 2007, Parker filed his second <u>pro se</u> motion to correct illegal sentence pursuant to Florida Rule of Criminal Procedure 3.800(a), asserting that it was improper for a successor judge to resentence him unless the record showed that the substitution was necessary or dictated by an emergency. Resp. Ex. UU at 1-19. The court, on October 18, 2007, denied the motion. <u>Id</u>. at 20. On November 8, 2007, the court denied Parker's motion for rehearing. <u>Id</u>. at 21-43, 44. Upon Parker's appeal, the appellate court, on July 8, 2008, affirmed the trial court's decision per curiam, <u>see</u> <u>Parker v. State</u>, 988 So.2d 626 (Fla. 1st DCA 2008); Resp. Ex. VV, and denied his motion for rehearing on August 20, 2008, <u>see</u> Resp. Exs. WW; XX. The mandate issued on September 5, 2008. Resp. Ex. TT.

On October 3, 2007, Parker filed a third <u>pro se</u> motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. Resp. Ex. ZZ at 1-14. In his request for post conviction relief, Parker asserted that counsel was ineffective at the resentencing hearing when he stipulated to the classification of Petitioner as a habitual offender without Petitioner's consent or knowledge (ground one) and failed to object to the State failing to conform to the statutory requirement prior to seeking a sentence

9

pursuant to Florida Statutes section 775.084 (ground two). Additionally, he claimed that the written sentence does not conform to the oral pronouncement (ground three). On October 18, 2007, the court denied the motion as untimely. <u>Id</u>. at 15-16. The court denied Parker's motion for rehearing on November 8, 2007. <u>Id</u>. at 17-19, 20. Upon Parker's appeal, the appellate court ordered the State to show cause why Parker's sentence should not be reversed and the cause remanded to the trial court to hold an evidentiary hearing or to attach record portions conclusively refuting Petitioner's third claim to be considered under Rule 3.800(a). Resp. Exs. AAA; BBB. On July 17, 2008, the appellate court stated:

> The Appellant challenges the postconviction court's summary denial of his rule 3.850 postconviction motion. Because the Appellant's third claim that his written judgment does not comport with the oral pronouncement is facially sufficient, we reverse. All other issues are affirmed without further discussion.
>
> The Appellant claims his sentence is illegal because the sentencing judge did not orally pronounce that the sentence was a habitual felony offender sentence; however, the written judgment contains the imposition of a habitual felony offender sentence. The trial court failed to address the Appellant's claim because the rule 3.850 motion was summarily denied as untimely. However, this Court may construe the claim as if it were filed under rule 3.800(a). <u>See</u> <u>Valdes v. State</u>, 765 So.2d 774, 777 (Fla. 1st DCA 2000). As the State concedes, the trial court should have treated the third claim as though it were filed pursuant to rule 3.800(a). We accordingly reverse the postconviction court's summary denial of the Appellant's third claim

10

> and remand for the postconviction court to
> attach appropriate record portions refuting
> the claim, or grant relief.

Parker v. State, 987 So.2d 177, 177-78 (Fla. 1st DCA 2008); Resp.

Ex. CCC.  The mandate issued on August 4, 2008.  Resp. Ex. DDD.

On remand, the trial court denied the third claim on the

merits.   Resp. Ex. FFF at 4-14.   Upon Parker's appeal, the

appellate court affirmed the trial court's decision per curiam

without issuing a written opinion on April 1, 2009.   Parker v.

State, 8 So.3d 1137 (Fla. 1st DCA 2009); Resp. Ex. HHH.   The

appellate court denied his motion for rehearing on May 20, 2009,

see Resp. Exs. III; JJJ, and the mandate issued on June 5, 2009,

see Resp. Ex. KKK.

On April 13, 2009, Parker filed his third pro se motion to

correct illegal sentence pursuant to Florida Rule of Criminal

Procedure 3.800(a), asserting that it was error for Judge Taylor,

a successor judge, to resentence Parker without a showing of

necessity or an emergency.  Resp. Ex. MMM at 1-16.   The trial

court, on April 23, 2009, denied the Rule 3.800 motion, see id. at

17, and later denied Parker's motion for rehearing, see id. at 18-

21, 22.  On appeal, the appellate court affirmed the trial court's

decision per curiam on September 22, 2009, see Parker v. State, 22

So.3d 543 (Fla. 1st DCA 2009); Resp. Ex. NNN, and denied Parker's

motion for rehearing on November 17, 2009, see Resp. Exs. LLL; OOO.

The mandate issued on December 3, 2009.  Resp. Ex. PPP.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

### V. Standard of Review

The Court will analyze Parker's claims under 28 U.S.C. § 2254(d).  This standard is described as follows:

> As explained by the Supreme Court, the phrase "'clearly established Federal law' . . . refers to the holdings . . . of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120

S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  We have held that to be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing law set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts." <u>Putman v. Head</u>, 268 F.3d 1223, 1241 (11th Cir. 2003).

As regards the "unreasonable application" prong of § 2254(d)(1), we have held as follows:

> A state court decision is an unreasonable application of clearly established law if the state court unreasonably extends or fails to extend a clearly established legal principle to a new context.  An application of federal law cannot be considered unreasonable merely because it is, in our judgment, incorrect or erroneous; a state court decision must also be unreasonable.  Questions of law and mixed questions of law and fact are reviewed <u>de</u> <u>novo</u>, as is the district court's conclusion regarding the reasonableness of the state court's application of federal law.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1236 (11th Cir. 2007) (quotation marks and citations omitted).  In sum, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." <u>Williams</u>, 529 U.S. at 409, 120 S.Ct. at 1521.  Finally, 28 U.S.C. § 2254(e)(1) commands that for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual

findings] by clear and convincing evidence."[2]
28 U.S.C. § 2254(e)(1).

Ward v. Hall, 592 F.3d 1144, 1155-56 (11th Cir. 2010), cert. denied, 131 S.Ct. 647 (2010).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Harrington v. Richter, 131 S.Ct. 770, 785 (2011) (holding that section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been adjudicated on the merits); Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under § 2254(d).

## VI. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b), (c). To exhaust

---

[2] "This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

Recently, the United States Supreme Court discussed the doctrine of procedural default:

Federal habeas courts reviewing the
constitutionality of a state prisoner's
conviction and sentence are guided by rules
designed to ensure that state-court judgments
are accorded the finality and respect
necessary to preserve the integrity of legal
proceedings within our system of federalism.
These rules include the doctrine of procedural
default, under which a federal court will not
review the merits of claims, including
constitutional claims, that a state court
declined to hear because the prisoner failed
to abide by a state procedural rule. <u>See</u>,
<u>e.g.</u>, <u>Coleman</u>,[3] <u>supra</u>, at 747-748, 111 S.Ct.
2546; <u>Sykes</u>, <u>supra</u>, at 84-85, 97 S.Ct. 2497.
A state court's invocation of a procedural
rule to deny a prisoner's claims precludes
federal review of the claims if, among other
requisites, the state procedural rule is a
nonfederal ground adequate to support the
judgment and the rule is firmly established
and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker
v. Martin</u>, 562 U.S. --, --, 131 S.Ct. 1120,
1127-1128, 179 L.Ed.2d 62 (2011); <u>Beard v.
Kindler</u>, 558 U.S. --, --, 130 S.Ct. 612,
617-618, 175 L.Ed.2d 417 (2009). The doctrine
barring procedurally defaulted claims from
being heard is not without exceptions. A
prisoner may obtain federal review of a
defaulted claim by showing cause for the
default and prejudice from a violation of
federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750,
111 S.Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S.Ct. 1309, 1316 (2012).

Thus, procedural defaults may be excused under certain
circumstances: notwithstanding that a claim has been procedurally
defaulted, a federal court may still consider the claim if a state
habeas petitioner can show either (1) cause for and actual
prejudice from the default; or (2) a fundamental miscarriage of

---

[3] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).

16

justice.  Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted);  In Re Davis,  565 F.3d 810, 821 (11th Cir. 2009) (citation omitted).  In order for Petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that
> prevented [him] from raising the claim and
> which cannot be fairly attributable to his own
> conduct." McCoy v. Newsome, 953 F.2d 1252,
> 1258 (11th Cir. 1992) (quoting Carrier, 477
> U.S. at 488, 106 S.Ct. 2639).  Under the
> prejudice prong, [a petitioner] must show that
> "the  errors  at  trial  actually  and
> substantially disadvantaged his defense so
> that he was denied fundamental fairness." Id.
> at 1261 (quoting Carrier, 477 U.S. at 494, 106
> S.Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999), cert. denied, 528 U.S. 934 (1999).

In Martinez, the Supreme Court modified the general rule in Coleman[4] to expand the "cause" that may excuse a procedural default.  Martinez, 132 S.Ct. at 1315.

> Allowing a federal habeas court to hear a
> claim of ineffective assistance of trial
> counsel when an attorney's errors (or the
> absence of an attorney) caused a procedural

---

[4] "Negligence on the part of a prisoner's postconviction attorney does not qualify as 'cause.'" Maples v. Thomas, 132 S.Ct. 912, 922 (citing Coleman, 501 U.S. at 753).  The Court reasoned that, under principles of agency law, the attorney is the prisoner's agent, and therefore, the principal bears the risk of negligent conduct on the part of his agent. Coleman, 501 U.S. at 753-54.  In Coleman, the alleged ineffectiveness of counsel was on appeal from an initial-review collateral proceeding, and in that proceeding the prisoner's claims had been addressed by the state habeas trial court.  Id. at 755.  However, the Martinez Court addressed inadequate assistance of counsel at an initial-review collateral proceeding.

>
> default in an initial-review collateral
> proceeding acknowledges, as an equitable
> matter, that the initial-review collateral
> proceeding, if undertaken without counsel or
> with ineffective counsel, may not have been
> sufficient to ensure that proper consideration
> was given to a substantial claim.  From this
> it follows that, when a State requires a
> prisoner to raise an ineffective-assistance-
> of-trial-counsel claim in a collateral
> proceeding, a prisoner may establish cause for
> a default of an ineffective-assistance claim
> in two circumstances. The first is where the
> state courts did not appoint counsel in the
> initial-review collateral proceeding for a
> claim of ineffective assistance at trial. The
> second is where appointed counsel in the
> initial-review collateral proceeding, where
> the claim should have been raised, was
> ineffective under the standards of <u>Strickland
> v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052,
> 80 L.Ed.2d 674 (1984).  To overcome the
> default, a prisoner must also demonstrate that
> the underlying ineffective-assistance-of-
> trial-counsel claim is a substantial one,
> which is to say that the prisoner must
> demonstrate that the claim has some merit. <u>Cf</u>.
> <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct.
> 1029, 154 L.Ed.2d 931 (2003) (describing
> standards for certificates of appealability to
> issue).

<u>Id</u>. at 1318-19.

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result.  The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and
> prejudice, there remains yet another avenue

for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S.Ct. at 2649.[5] "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

## VII. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v.</u>

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith,
539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S.
668, 687 (1984)).

> To establish deficient performance, a
> person challenging a conviction must show that
> "counsel's representation fell below an
> objective standard of reasonableness."
> [Strickland,] 466 U.S. at 688, 104 S.Ct. 2052.
> A court considering a claim of ineffective
> assistance must apply a "strong presumption"
> that counsel's representation was within the
> "wide range" of reasonable professional
> assistance. Id., at 689, 104 S.Ct. 2052. The
> challenger's burden is to show "that counsel
> made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the
> defendant by the Sixth Amendment." Id., at
> 687, 104 S.Ct. 2052.
>
> With respect to prejudice, a challenger
> must demonstrate "a reasonable probability
> that, but for counsel's unprofessional errors,
> the result of the proceeding would have been
> different. A reasonable probability is a
> probability sufficient to undermine confidence
> in the outcome." Id., at 694, 104 S.Ct. 2052.
> It is not enough "to show that the errors had
> some conceivable effect on the outcome of the
> proceeding." Id., at 693, 104 S.Ct. 2052.
> Counsel's errors must be "so serious as to
> deprive the defendant of a fair trial, a trial
> whose result is reliable." Id., at 687, 104
> S.Ct. 2052.

Harrington, 131 S.Ct. at 787-88.

Since both prongs of the two-part Strickland test must be
satisfied to show a Sixth Amendment violation, "a court need not
address the performance prong if the petitioner cannot meet the
prejudice prong, and vice-versa." Ward, 592 F.3d at 1163 (citation
omitted).  "Surmounting Strickland's high bar is never an easy

task." <u>Harrington</u>, 131 S.Ct. at 788 (quoting <u>Padilla v. Kentucky</u>, 130 S.Ct. 1473, 1485 (2010)).

A state court's adjudication of an ineffectiveness claim is accorded great deference.  "The standards created by <u>Strickland</u> and § 2254(d) are both 'highly deferential,' [<u>Strickland</u>], at 689, 104 S.Ct. 2052; <u>Lindh v. Murphy</u>, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is 'doubly' so, <u>Knowles</u>[6], 556 U.S., at ----, 129 S.Ct. at 1420." <u>Harrington</u>, 131 S.Ct. at 788.

> The question "is not whether a federal court believes the state court's determination" under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Schriro</u>, <u>supra</u>, at 473, 127 S.Ct. 1933. And, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

<u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009); <u>see</u> <u>also</u> <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to

---

[6] <u>Knowles v. Mirzayance</u>, 556 U.S. 111 (2009).

a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision.").

### VIII. Findings of Fact and Conclusions of Law

#### A. Ground One

As ground one, Parker asserts that his right to due process of law was violated when the show-up identification by the victim was impermissibly suggestive.  Petitioner argued this issue on direct appeal, see Resp. Ex. E, the State filed an Answer Brief, see Resp. Ex. F, and the appellate court affirmed Parker's conviction and sentence per curiam without a written opinion concerning this issue, see Parker, 727 So.2d 918.  To the extent that Parker is raising, in ground one, the same claim he presented on direct appeal, the claim is sufficiently exhausted.

The State, in its appellate brief, addressed the claim on the merits.  Resp. Ex. F.  Thus, the appellate court may have affirmed Parker's conviction based on the State's argument on the merits. If the appellate court addressed the merits, Parker would not be entitled to relief because the state court's adjudication of this claim is entitled to deference under AEDPA.[7] After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary

---

[7] In Harrington, 131 S.Ct. at 785, the Court "h[eld] and reconfirm[ed] that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"

to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Parker's claim, nevertheless, is without merit.  The factors to be considered in determining whether the identification was reliable are outlined in Neil v. Biggers, 409 U.S. 188, 199 (1972).  They are:  "the opportunity of the witness to view the suspect at the time of the crime, the witness'[s] degree of attention, the accuracy of his prior description of the suspect, the level of certainty of the identification, and the time between the crime and the identification."  United States v. Beale, 921 F.2d 1412, 1433 (11th Cir. 1991) (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)), cert. denied, 502 U.S. 829 (1991).  In Manson v. Brathwaite, 432 U.S. 98 (1977), the United States Supreme Court stated that absent "'a very substantial likelihood of irreparable misidentification,'" id. at 116 (citation omitted), the identification of a suspect by a witness is:

> evidence . . . for the jury to weigh.  We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

Id.

In the instant case, Terri Gardner (the victim) testified that a black man, whom she identified as Parker, approached her at a gas station at the driver's side window of her truck and asked her if she wanted to buy a watch.  Tr. at 24-25.  She stated that he displayed the watch which had a square black face with a diamond at the top.  Id. at 26.  After she declined his offer, Parker placed a gun to her side and told her to give him all her money.  Id. at 28-29.  Undoubtedly, Gardner had an opportunity to view the suspect at the time of the crime, as he stood "[r]ight outside [her] door window" for what "seemed about five minutes."  Id. at 26, 27.  She affirmed that she got a good look at his face.  Id.  Moreover, the robbery occurred during the daylight hours, thus providing natural light for her to view him.  See Resp. Ex. C, Arrest and Booking Report.  She testified that the entire robbery lasted about fifteen to twenty minutes.  Tr. at 32.

Gardner paid close attention to details, such as clothing, gender, and race, so that she could provide a description to the police.  As soon as Parker fled with her items (a Farmer's Federal Credit Union bank envelope containing five twenty-dollar bills; a ten-dollar bill from her change purse; her wedding band; and the microphone of the CB radio), she left to report the robbery to "a cop sitting on the side of the road . . . ."  Id. at 29-32, 46. She gave the officer a description of the suspect: dark blue type

sweat shirt with a V neck, wearing pants, headed in the opposite direction, with a white shirt underneath the sweat shirt. Id. at 35-36, 48. She testified that the police officers brought Parker back about thirty minutes later. Id. at 37. She stated that, while about fifteen to twenty feet away from the suspect with nothing to obstruct her view of him, she identified Parker as the man who had robbed her. Id. She noted that, at the time of the show-up, Parker was wearing a white shirt, not the blue sweat shirt that he had worn during the robbery. Id. at 37, 48. She also identified her bank envelope with her money inside it as well as the watch that Parker had tried to sell her. Id. at 38. She confirmed that, other than the sweat shirt that Parker had taken off, Parker looked the same at the show-up as he did when he robbed her. Id. at 49.

Officer Jowers testified that Gardner had given a description of the man who had robbed her, including race, gender, clothing, and weapon. Id. at 56. Jowers stated that, throughout the entire search for the suspect and canvassing of the neighborhood, he did not observe any other individuals in the area who matched the description of the suspect other than Parker. Id. at 64. Officer Freeman stated that he saw Parker take off the blue sweat shirt and then raise his hands over his head, stating "okay, okay, you've got me." Id. at 82, 83, 89, 93, 95. Additionally, Officer Caldwell testified that he was given a description of the suspect and that

no one else in the neighborhood matched that description. Id. at 102. Officer Emanuel testified that, during pat down searches, he found the watch in Parker's possession as well as an envelope containing five twenty-dollar bills. Id. at 112-13. Officers Emanuel and Grady stated that Gardner identified Parker at the show-up from fifteen to twenty feet away without anything obstructing her view. Id. at 115, 126.

On this record, Parker has failed to show any likelihood, much less a "substantial likelihood of irreparable misidentification." In reviewing the testimony of the victim and the officers relating to the victim's initial description of the suspect and the show-up identification occurring within thirty minutes of the crime and considering the factors outlined in Neil v. Biggers, this Court is convinced that the victim's out-of-court identification was reliable. Moreover, her out-of-court identification did not taint her in-court identification. Accordingly, Parker's ground one does not warrant federal habeas relief.

### B. Ground Two

As ground two, Parker contends that counsel was ineffective because he failed to file motions to suppress relating to (a) the illegal arrest, (b) the impermissibly suggestive show-up identification, (c) the firearm, and (d) the sweat shirt. Petitioner raised this ineffectiveness claim in his first Rule 3.850 motion. Identifying the two-prong Strickland ineffectiveness

test as the controlling law, the trial court denied the Rule 3.850

motion with respect to this issue, stating:

>In Defendant's eighth ground for relief,
>he alleges that his attorney rendered
>ineffective assistance by failing to file
>Motions to Suppress various evidence,
>specifically a gun, a sweatshirt, a bank
>envelope, and Defendant's arrest, which
>allegedly lacked probable cause.
>
>With respect to the sweatshirt and
>firearm, this Court notes that a defendant's
>act of discarding an item results in his
>abandonment of that property, thereby,
>relinquishing any interest that the particular
>defendant may have held in that property. See
>California v. Hodari D., 499 U.S. 621, 111
>S.Ct. 1547, 113 L.Ed.2d 690 (1991); Perez v.
>State, 620 So.2d 1256 (Fla. 1993); State v.
>Bartee, 623 So.2d 458 (Fla. 1993). Officer
>Freeman testified that he observed Defendant
>remove a sweat shirt and discard it on the
>ground. (Exhibit "E," pages 81-85.) Officer
>Wilson testified that he located the weapon
>which was introduced into evidence at trial
>under a blue truck, not in Defendant's
>possession. (Exhibit "E," pages 135-139.)
>Therefore, the recovery of the firearm and
>clothing was not the result of an illegal
>search or seizure of Defendant. Thus,
>sufficient grounds for Motions to Suppress
>this evidence were lacking and counsel cannot
>be termed ineffective for failing to file such
>Motions.
>
>Additionally, Defendant asserts that the
>requisite probable cause necessary for his
>arrest was lacking, and thus, his arrest
>should have been suppressed along with an
>envelope containing money from the victim. The
>record reveals that the victim, Ms. Gardner,
>testified that an individual approached her at
>a gas station and asked her to purchase a
>watch; when she refused, that individual
>placed a gun in her side and demanded all of
>her money. That individual, whom she

27

identified at trial as Defendant, was wearing a "dark blue type sweat shirt with a V neck," with a white shirt under that sweatshirt. Ms. Gardner also testified that Defendant took from her a Farmer's Federal Credit Union envelope which contained one hundred dollars (five twenty dollar bills), another ten dollars, her wedding ring, a CB radio from her company truck and a "mike piece" from that radio. After alerting the police to what occurred, Ms. Gardner was asked to identify an individual whom the police had in custody, which she did. (Exhibit "E," pages 25-41.) Officer Jowers, a correctional officer, testified that an individual whom he identified as the victim approached the vehicle he was traveling in and informed Officer Becker and himself that she had been robbed. Ms. Gardner gave a description of that individual, and based upon that information he caught the attention of a Sheriff's Officer to relay that information. The two corrections officers proceeded to circle the area in an attempt to locate the perpetrator. They eventually located Defendant, who matched the description given by the victim, and informed Sheriff's Officers of their discovery. Officers Jowers and Becker located Defendant a second time. This time they exited their vehicle, drew their weapons, and Officer Becker instructed Defendant to place his hands in the air and lay on the ground. After a brief pause, Defendant fled from the officers. Officer Jowers observed Defendant for the third and final time as he was fleeing the area. Sheriff's Officers at the scene had their weapons drawn and they demanded that Defendant stop and place his hands in the air. Defendant failed to comply and once again he fled from the officers. Eventually, Defendant was arrested by other officers. Officer Jowers testified that throughout the entire search for Defendant he did not observe any other individuals in the area who matched the description of the suspect other than Defendant. (Exhibit "E," pages 53-64.) Officer Freeman observed Defendant remove a dark sweat shirt and discard it to the ground. After

looking the officer's way, Defendant raised
his hands over his head and stated, "okay,
okay, you've got me" and he started to walk
toward Officer Freeman, but once again
Defendant fled. Officer Freeman radioed to the
other officers looking for Defendant that he
was again on the run. Officer Freeman came in
contact again with Defendant when he was in
custody of another officer. Officer Freeman
later retrieved the sweatshirt which he
witnessed Defendant remove. (Exhibit "E,"
pages 78-86.) Officer Caldwell testified that
he participated in the search for an
individual whom he identified as Defendant. At
one point Officer Caldwell observed Defendant
running from other officers. In a successful
effort to detain Defendant, they both
collided. Officer Caldwell searched Defendant
and located a watch in Defendant's pocket.
(Exhibit "E," pages 96-103.) Officer Emanuel
testified that while assisting in the
apprehension of a robbery suspect he came into
contact with Defendant. Officer Emanuel placed
Defendant in his patrol car after searching
him. In that search of Defendant, the officer
found a watch. Officer Emanuel transported
Defendant to the location of the victim so
that she could identify him. Prior to meeting
with the victim, Officer Emanuel searched
Defendant a second time and located an
envelope containing one hundred dollars (five
twenty dollar bills). The victim, Ms. Gardner,
identified Defendant as the perpetrator of the
robbery. At the time she did so, he wasn't
wearing a sweatshirt. She also identified the
money which she asserted belonged to her and
the watch as the one which Defendant attempted
to sell to her. (Exhibit "E," pages 110-118.)
Officer Grady testified that the victim was
asked to identify a suspect Defendant in the
robbery which she did, and following that
identification Defendant was placed under
arrest. (Exhibit "E," pages 123-128.) Officer
Wilson also testified that he participated in
the search for the robbery suspect, which he
identified as Defendant, and that in his
search for evidence at the scene he located a

29

weapon underneath a truck. (Exhibit "E," pages 132-138.)

Based upon this evidence there was sufficient probable cause for Defendant's arrest, and there was no improper seizure of the envelope containing money from the victim. Defendant's contention that counsel rendered ineffective assistance by failing to file a Motion to Suppress this evidence is meritless.

Resp. Ex. O at 31-34.  On appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Parker's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Parker would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.   Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Parker is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Parker's claim is still without merit.   The trial

court's conclusion is fully supported by the record.  In evaluating
the performance prong of the Strickland ineffectiveness inquiry,
there is a strong presumption in favor of competence.  The inquiry
is "whether, in light of all the circumstances, the identified acts
or omissions were outside the wide range of professionally
competent assistance." Strickland, 466 U.S. at 690.  "[H]indsight
is discounted by pegging adequacy to 'counsel's perspective at the
time' . . . and by giving a 'heavy measure of deference to
counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005)
(citations omitted).  Thus, Petitioner must establish that no
competent attorney would have taken the action that counsel, here,
chose.  Dingle v. Sec'y for Dept. of Corr., 480 F.3d 1092, 1099
(11th Cir. 2007) ("The question is whether some reasonable lawyer
at the trial could have acted as defense counsel acted in the trial
at issue and not what 'most good lawyers' would have done.")
(citation omitted), cert. denied, 552 U.S. 990 (2007).  Petitioner
has failed to carry this burden.

Given the record, counsel's performance was well within the
wide range of professionally competent assistance.  In light of the
circumstances surrounding Parker's arrest, the show-up
identification within thirty minutes of the crime, and the
retrieval of the firearm and sweat shirt, Parker has not shown that
counsel's failure to file motions to suppress was deficient
performance.

Even assuming arguendo deficient performance by defense counsel, Parker has not shown prejudice.  Parker has not shown that a reasonable probability exists that the outcome of the case would have been different if counsel had filed motions to suppress relating to Parker's arrest, the show-up identification, the firearm and sweat shirt.  Parker's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.

### C. Ground Three

As ground three, Parker asserts that counsel was ineffective because he failed to object to the trial court's decision denying a read-back of trial testimony and failed to argue the issue. Parker raised this ineffectiveness claim in his first Rule 3.850 motion.  The trial court ultimately denied the Rule 3.850 motion with respect to this issue, stating:

> In Defendant's "Part B" of ground two for relief, he alleges that defense counsel rendered ineffective assistance by failing to object to the given instructions to the jury concerning questions they posed to this Court. Defendant asserts that this Court failed to follow Florida Rule of Criminal Procedure 3.410 by failing to give counsel adequate opportunity to "object and argue his position as to how the questions should be answered" dealing with the first set of questions posed by the jury. As to the second set of questions, Defendant alleges that counsel "failed to make any meaningful suggestions, objections or argument," and that counsel's failure to object to this Court's handling of these questions did not preserve the issue for appellate review.

. . . .

Additionally, this Court notes that the record discloses that the jury began deliberations at 4:18 in the afternoon.[8] The jury posed their first question to this Court at 4:20.[9] The record reflects the following dialogue concerning that question.

> The Court: If they want to know anything about the instruction have your secretary redo page 13 and have them strike six, seven, nine and ten which I did not read and I'll send them the packet.
>
> Mr. Shoemaker [Defense Counsel]: It was too fast for that.
>
> The Court: They probably want to know when they are going to eat.
>
> (Defendant present)
>
> The Court: Here's the question, says is it possible to hear or read a witness' testimony, they put victim Terri Gardner, Freeman, Jowers, Emanuel, Officer that tackled the Defendant. Answer is no, rely on their collective memory. Ask them to step out.[10]

(Exhibit "E," pages 245-246.) The jury was then instructed to rely on their collective memories in reaching a verdict.[11] The jury returned to deliberations at 4:30 and at 4:50 the following occurred.

> (Defendant present)

---

[8] Tr. at 245.

[9] Tr. at 246.

[10] See Resp. Ex. C at 21, Jury's 1st Question.

[11] Tr. at 247.

The Court: Where is Remmington, the defendant's home in relation to the area? Two, what time of day was the robbery? What time elapsed when the defendant was first seen? What time elapsed when the defendant was apprehended or captured? Where was the defendant captured in relation to the area?[12] Wasn't all that testimony brought out?

Mr. Shoemaker: Absolutely, yes, sir.

The Court: I mean, all -- everyone of these things were testified to by one of these witnesses or more, weren't they[?]

Mr. Shoemaker: Yes, sir, I think they were all testified to.

The Court: Except nobody testified what direction Remmington was from the scene but just testified three miles away or so, wasn't it?

Mr. Guy [Assistant State Attorney]: Right, three or four miles.

The Bailiff: Three or four miles is what they said.

The Court: But the question is where is Remmington and parenthesis defendant's home in relation to the area. I don't think there was any testimony to that.

Mr. Shoemaker: No, sir.

The Court: So I'll tell them again rely on their collective memories.

(Exhibit "E," pages 247-248.) Thus, not only was defense counsel present at each discussion

---

[12] See Resp. Ex. C at 22, Jury's 2nd Questions.

> pertaining to the questions posed by the jury,
> but counsel was given the opportunity to argue
> his position before this Court, which counsel
> took full advantage of. Further, Defendant
> fails to suggest what additional "objections"
> should have been presented by counsel, nor are
> any apparent form the record.

Resp. Ex. O at 25-27.  Upon Parker's appeal, the appellate court affirmed the denial per curiam.

Given the record in the instant action, the appellate court may have affirmed the denial of Parker's motion for post conviction relief on the merits.  If the appellate court addressed the merits, Parker would not be entitled to relief because the state courts' adjudications of this claim are entitled to deference under AEDPA. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law.  Nor were the state court adjudications based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Parker is not entitled to relief on the basis of this claim.

Even assuming that the appellate court did not affirm the denial of the Rule 3.850 motion on the merits or that the state courts' adjudications of this claim are not entitled to deference under AEDPA, Parker's claim is still without merit.  The record supports the trial court's conclusion.  Indeed, based upon the

record, the Court determines that counsel's performance was within
the wide range of professionally competent assistance. Even
assuming arguendo deficient performance by defense counsel, Parker
has not shown prejudice. Parker has not shown that a reasonable
probability exists that the outcome of the case would have been
different if counsel had argued the issue or objected to the trial
judge's decision that the jurors should rely on their collective
memories in recalling the evidence during deliberation. Therefore,
Parker's ineffectiveness claim is without merit since he has shown
neither deficient performance nor resulting prejudice.[13]

---

[13] See Purvis v. Crosby, 451 F.3d 734, 737 (11th Cir. 2006)
(stating that, where petitioner claims counsel should
have objected, "we are to gauge prejudice against the outcome of the
trial: whether there is a reasonable probability of a different
result at trial, not on appeal."), cert. denied, 549 U.S. 1035
(2006). The Court noted that its decision in Davis v. Sec'y for
the Dep't of Corr., 341 F.3d 1310 (11th Cir. 2003) (per curiam),
"is not to the contrary." Purvis, 451 F.3d at 737.

> [In Davis, 341 F.3d 1310] trial counsel
> objected during voir dire to the Batson error
> that was being committed but when his
> objection was rejected, counsel failed to take
> the next step of renewing that objection after
> the conclusion of voir dire; in the Florida
> courts that is a necessary step before the
> issue may be reviewed on appeal. Id. at 1312.
> This Court held that because the failure of
> counsel was solely in his role as appellate
> counsel at trial (those are not the words we
> used in Davis, but it is what we meant), the
> prejudice inquiry should focus on the effect
> that counsel's omission at trial had on the
> appeal. Id. at 1315-16.

Id.

36

### D. Ground Four

As ground four, Parker contends that counsel was ineffective because he erroneously advised him with respect to his right to testify at trial.  He asserts that counsel told him that, if he testified, he would lose the right to opening and closing arguments and that the prosecutor would be able to bring out the specific details of his prior convictions.  Assuming that Parker intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted.[14]  The trial court ultimately denied the Rule 3.850 motion relating to this issue, stating:

> In Defendant's seventh ground for relief, he alleges that counsel failed to render effective assistance based upon counsel's alleged "erroneous advice regarding his right to testify in his own behalf, and refusing to allow him to take the stand."  Defendant maintains that he informed counsel of his desire to testify but that counsel "ignored"

----

[14] To the extent that Parker has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred.  See Response at 29.  Parker has not shown either cause excusing the default or actual prejudice resulting from the bar.  Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception.  "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."  Martinez, 132 S.Ct. at 1318 (citation omitted).  As discussed in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit.  Therefore, Parker has not shown that he can satisfy an exception to the bar.

this request and that counsel informed him that if he were to testify in his own behalf that "he would lose his right to first and closing arguments, and that the prosecutor would bring out the details of his prior convictions."

Initially, this Court will note that even assuming, <u>arguendo</u>, that Defendant's unlikely claims are correct, Defendant has failed to even allege that but for this alleged misadvise of counsel he would have testified at trial, what [his] testimony would have been, or how his defense was prejudiced by his choice not to testify. Furthermore, this Court inquired of Defendant following the closing of the State's case concerning his decision to testify on his own behalf. During that inquiry the following colloquy occurred:

> The Court: You've sat through this trial this morning, State's called some nine witnesses and each time when the State completed their examination of a particular witness then Mr. Shoemaker would cross examine them, you saw and heard that, correct?
>
> The Defendant: Yes, sir.
>
> The Court: Now, you understand that the State has rested which means they've concluded their presentation of the case as far as witnesses go, you understand that?
>
> The Defendant: Yes, sir.
>
> The Court: Now, by that it means if you have anything to present then when the jury is brought back that you would be allowed or given the opportunity to present either testimony from yourself or any witnesses that you may call, you understand that?

The Defendant: Yes, sir.

The Court: Now, you understand you're not required to prove or disprove anything in this case?

The Defendant: I understand.

The Court: You understand the State must prove and convince this jury beyond a reasonable doubt that you committed this crime with which you're charged.

The Defendant: I understand.

The Court: Now, if you want to testify of course you have a right to testify, you understand that part?

The Defendant: I understand.

The Court: You understand if you elect to become a witness then you're treated like any other witness is treated in a trial?

The Defendant: I understand.

The Court: And part of the questions that the State would ask of you is have you ever been convicted of a felony or any crimes of dishonesty, and the State tells me he has five judgments involving five felony convictions and four petit thefts. He would be able to ask you whether or not you've been convicted of those number and you would be required to tell him, you understand that?

The Defendant: I understand.

The Court: Now, of course if you elect not to testify then of course that will not become part of - the

39

jury will never know about that. Now, you've discussed this decision with Mr. Shoemaker as to whether or not you would become a witness, he advises me that you elected after consulting with him not to testify, is that correct?

The Defendant: That's correct.

The Court: Are you satisfied with that decision?

The Defendant: One hundred percent.

(Exhibit "E," pages 162-164.) Therefore, even assuming, _arguendo_, that counsel did erroneously advise Defendant concerning the depth to which the State could have inquired concerning his prior felony convictions, this Court properly and adequately instructed Defendant concerning that matter, an[d] thus, there is no prejudice to Defendant.

Resp. Ex. O at 30-31.  On appeal, the appellate court affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.  Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court

proceedings.  Thus, Parker is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Petitioner's ineffectiveness claim, nevertheless, is without merit.  The trial court's conclusion is fully supported by the record.  Counsel's performance was within the wide range of professionally competent assistance.  The record reflects that, when Parker, after conferring with counsel, decided not to testify and the defense rested, the trial judge informed Petitioner: "All right then, the defense would rest, then it's understood that Mr. Shoemaker would get to make two closing arguments and [the] State would get the middle argument, correct?"  Tr. at 165.  Assuming arguendo deficient performance by defense counsel, Parker has not shown prejudice.  Indeed, there was substantial evidence against Parker at trial, including the victim's identification of him as the man who had robbed her.  Therefore, Parker's ineffectiveness claim is without merit since he has shown neither deficient performance nor resulting prejudice.

## E. Ground Five

As ground five, Parker contends that counsel was ineffective because he failed to call Officer Lockett as a witness at trial. Assuming that Parker intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in

state court, his ineffectiveness claim is sufficiently exhausted.[15]

The trial court ultimately denied the Rule 3.850 motion relating to

this issue, stating:

> In Defendant's sixth ground for relief, he alleges that counsel rendered ineffective assistance by failing to call specific witnesses for impeachment purposes. Defendant contends that Officers Lockett and Becker's testimony "totally conflicted with the other officer's," and that he informed counsel of this yet counsel failed to utilize these witnesses' [sic] at trial.
>
> This Court will note that, Defendant has failed to properly and sufficiently state a claim of ineffective assistance of counsel pursuant to a claim of failure by counsel to properly investigate a case and interview witnesses. See Highsmith v. State, 617 So.2d 825 (Fla. 1st DCA 1993). Defendant has failed to allege that these witness were available to testify at trial, nor does he allege the substance of these witnesses alleged testimony.
>
> Additionally, this Court has reviewed the depositions of these alleged impeachment witnesses and finds that Defendant's contention is meritless. While minor discrepancies may exist between the testimony of these witnesses and the State's witnesses at trial, their testimony falls substantially short of Defendant's assertions. (Exhibits

---

[15] To the extent that Parker has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred. See Response at 31. Parker has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception. As reflected in the alternative merits analysis which follows, this ineffectiveness claim lacks any merit. See Martinez, 132 S.Ct. at 1318. Therefore, Parker has not shown that he can satisfy an exception to the bar.

"C," "D," "E," pages 53-66, 78-87, 96-104,
110-118, 123-130, 132-139, 142-150.)

Resp. Ex. O at 29-30.  On Parker's appeal, the appellate court
affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the
merits, there are qualifying state court decisions.  Thus, the
Court considers this claim in accordance with the deferential
standard for federal court review of state court adjudications.
After a thorough review of the record and the applicable law, the
Court concludes that the state courts' adjudications of this claim
were not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established federal
law, and were not based on an unreasonable determination of the
facts in light of the evidence presented in the state court
proceedings.  Thus, Parker is not entitled to relief on the basis
of this claim.

Moreover, even assuming the state courts' adjudications of
this claim are not entitled to deference, Parker's ineffectiveness
claim is still without merit because the trial court's conclusion
is fully supported by the record.  Parker claims that counsel
should have called Officer Lockett whose testimony "would have
impeached Garner's, Jowers' and Emanuel's description of the
clothing claimed to have been worn by the Petitioner."  Second
Amended Petition at 22-23. According to Officer Caldwell's trial
testimony, Lockett and Caldwell were standing at the intersection

43

of Broadway and McDuff investigating a traffic accident when two correctional officers across the street yelled to them that someone had been robbed.  Tr. at 98-99.  Officer Lockett walked across the street to speak to the correctional officers and then advised Officer Caldwell what the officers had told him pertaining to the robbery and a description of the suspect.  Id. at 99.  Officer Lockett and Caldwell then canvassed the area looking for the suspect.  Id.  Officer Caldwell eventually "collided" with the suspect and handcuffed him.  Id. at 101-02.

According to Officer Lockett, he and Officer Caldwell set up a "mini perimeter" to attempt to capture the suspect.  Pet. Ex. B, Lockett's Deposition at 9.  At one point, he saw the suspect running out of a backyard and advised him to put his hands in the air and lie on the ground, but just when it appeared that the suspect was going to comply, the suspect "jumped up and took off again in an eastbound direction."  Id. at 9-10.  Lockett described the scene:

> At that time other officers started arriving and they began to fill in the holes in the perimeter.  And it was at that time I could hear they had -- other officers had sightings of him, but I never saw him again.

Id. at 11.  Lockett confirmed that he never saw the suspect again throughout the entire process.  Id.  Through radio transmission, however, he became aware that the suspect had been captured.  Id. Once the suspect was in custody, the search for the weapon began.

44

Id. at 12.   Lockett heard over the radio that a weapon had been found.  Id.  He  did not participate in the show-up identification. Id. at 14.  According to Lockett, he was not the reporting officer and did not draft any reports pertaining to the robbery.  Id. at 15.  He stated that, when he initially saw the suspect prior to the apprehension,  the  suspect  was  wearing  "a  white  T-shirt,  a sweatshirt and some blue-type" pants.  Id.  He then affirmed that it was a white sweatshirt.  Id.

Undoubtedly, there are minor inconsistencies with respect to the clothing descriptions given by the victim and police officers. Nevertheless, as concluded by the post-conviction court, while "minor  discrepancies  may  exist"  between  Officer  Lockett's deposition testimony and the State's witnesses at trial, counsel's failure  to  call  Officer  Lockett  as  a  witness  at  trial  was  not deficient performance.  Moreover, Officer Lockett's testimony may have  testified  as  to  the  flight  of  the  suspect  and  the  description of the suspect upon his initial encounter with him.  Additionally, defense  counsel  was  interested  in  securing  the  first  and  last closing  arguments  pursuant  to  the  law  at  the  time  of  Parker's trial.  See  Beasley v. State, 18 So.3d 473, 491-92 (Fla. 2009) ("[T]rial counsel prepared for trial in anticipation that Beasley might choose not to testify.  When Beasley declined to testify, the defense  strategically  decided  not  to  present  a  defense  case-in-

chief to avoid relinquishing the primacy and recency effect in the closing argument 'sandwich' or, in other words, the benefits inherent in giving both the first and last closing argument.  This was a reasonable defense strategy based on the procedural rules in force at the time of trial.") (footnote and citation omitted); see Tr. at 165.  Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance.

Even assuming arguendo deficient performance by defense counsel, in light of the minor discrepancies involved, the fact that the victim identified Parker as the robber, the officers' testimony that they did not observe any other individuals in the area who matched the description of the suspect other than Parker, Parker's repeated flight from the officers, his statement "okay, you got me" when the officers cornered him, and Parker's possession of the watch and items that the robber took from the victim, Parker has not shown prejudice.  He has failed to show that a reasonable probability exists that the outcome of the case would have been different if counsel had called Officer Lockett as a witness at trial.  Thus, Parker's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.

### F. Ground Six

As ground six, Parker asserts that counsel was ineffective because he failed to object to highly prejudicial hearsay

testimony.  He asserts that counsel allowed Officer Caldwell, who
had never spoken to the victim, to testify about the description of
the robber, which had been provided to him by Officer Lockett, a
non-testifying witness.[16]  Parker raised this ineffectiveness claim
in his first Rule 3.850 motion.  Identifying the two-prong
<u>Strickland</u> ineffectiveness test as the controlling law, the trial
court denied the Rule 3.850 motion with respect to this issue,
stating in pertinent part:

> This Court notes that the identity of the
> suspect, Defendant, was not an issue at trial.
> The victim positively identified Defendant as
> the perpetrator.  Therefore, even assuming
> that the officer's testimony regarding the
> description of the perpetrator was hearsay,
> Defendant is unable to demonstrate prejudice.

Resp. Ex. O at 35-36.  On Parker's appeal, the appellate court
affirmed the denial per curiam.

Assuming the appellate court affirmed the denial on the
merits, there are qualifying state court decisions.  Thus, the
Court considers this claim in accordance with the deferential
standard for federal court review of state court adjudications.
After a thorough review of the record and the applicable law, the
Court concludes that the state courts' adjudications of this claim
were not contrary to clearly established federal law, did not
involve an unreasonable application of clearly established federal

---

[16] <u>See</u> Tr. at 99 (Officer Caldwell's testimony stating the
description of the suspect that he had been given was: "[b]lack
male wearing jeans and shirt colored [sic] unknown at that time.").

law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Thus, Parker is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Parker's ineffectiveness claim is still without merit.  The trial court's conclusion is fully supported by the record.  Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance.  Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Thus, Petitioner's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice.

## G. Ground Seven

As ground seven, Parker asserts counsel was ineffective because he breached the attorney/client privilege of confidentiality.  Parker raised this ineffectiveness claim in his first Rule 3.850 motion.  The trial court ultimately denied the Rule 3.850 motion relating to this issue, stating:

> Defendant maintains that counsel failed to render effective assistance by breaching the attorney/client privilege and by becoming "an advocate for the state."  Specifically, Defendant avers that he had informed counsel that the state "failed to produce a single witness for deposition that could testify under oath that they retrieved a bank envelope

48

> from the Defendant."   However, counsel
> requested a continuance in order to depose
> another witness.   The prosecutor offered to
> "strike the witness" negating the necessity
> for a continuance, but defense counsel then
> informed the prosecutor that "as of now, you
> don't have anyone stating they took a bank
> envelope f[ro]m the Defendant."   Defendant
> asserts that following a recess the
> continuance requested by counsel was granted.
>
>                   . . . .
>
> [D]efendant fails to identify the identity of
> the witness that he references in the instant
> grounds for relief, nor does Defendant provide
> the substance of that alleged witness's
> testimony.   It appears to this Court that the
> witness to which Defendant refers is Officer
> Freeman.[17]
>
> [T]he only witness which defense counsel had
> not deposed was Officer Freeman.   However, it
> was through Officer Emanuel that the State
> established Defendant's possession of the bank
> envelope.   (Exhibit "E," pages 110-118.)[18]
>
>     Finally, as noted previously this
> testimony would have been cumulative as to the
> other evidence of Defendant's identity and his
> robbery of the victim.

Resp. Ex. O at 37-38.   On appeal, the appellate court affirmed the

denial per curiam.

---

[17] Parker now asserts that defense counsel requested the
continuance to depose Officer Emanuel.   See Petition at 25.
Respondents acknowledge that "counsel had not taken a discovery
deposition" of Officer Emanuel, and therefore "did not know what
Officer Emmanuel [sic] would testify to - including whether there
was anything Officer Emmanuel [sic] would say that counsel might
find exculpatory or contradictory of other witnesses." Response at
35.

[18] Tr. at 110-18.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions.  Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Parker is not entitled to relief on the basis of this claim.

Moreover, even assuming the state courts' adjudications of this claim are not entitled to deference, Parker's ineffectiveness claim, nevertheless, is without merit because the trial court's conclusion is supported by the record.  Counsel's performance was well within the range of professionally competent assistance. According to Parker, the following events transpired before trial. After discussions with Parker, defense counsel requested a continuance of the trial to depose Officer Emanuel.  See Petition at 25.  The State then moved to strike Officer Emanuel as a State witness and proceed to trial.  Id.  Parker asserts that "[i]nstead of advocating for [Parker] by agreeing with the State's offer to strike, counsel became an advocate for the State by arguing against that offer to strike" and by advising the prosecutor that the State

50

did not have a witness to testify that the bank envelope had been recovered from Parker. Id. Upon reconvening, the State withdrew its offer to strike Officer Emanuel as a witness, and the court granted defense counsel's motion to continue. Id.

Given the record, Parker's assertion that defense counsel "succeeded in assisting the State in preparing its case to the detriment of the Petitioner," see id., is unfounded. Quite to the contrary, defense counsel neither acted as an advocate for the State nor abandoned Parker during a critical stage of the criminal proceedings. Based upon these circumstances, it was not unreasonable for counsel to request a continuance to depose Officer Emmanuel to further develop the facts.

Even assuming arguendo deficient performance by defense counsel, Parker has not shown any resulting prejudice. Parker has failed to show that a reasonable probability exists that the outcome of the case would have been different if counsel had not requested the continuance to depose Officer Emanuel and had not opposed the State's offer to strike Emanuel as a witness. Even without Officer Emanuel's testimony relating to his recovery of the bank envelope from Parker, see Tr. at 110-22, the State's evidence against Parker was substantial, including the victim's identification of him as the man who had robbed her.[19]   Thus,

---

[19] As the post conviction court stated, Officer Emanuel's testimony "would have been cumulative as to the other evidence of Defendant's identity and his robbery of the victim." Resp. Ex. at

Parker's ineffectiveness claim fails because he has not shown either deficient performance or resulting prejudice. <u>See</u> Response at 35-36; Tr. at 110-22 (Officer Emanuel's testimony).

### H. Ground Eight

As ground eight, Parker contends that counsel was ineffective because, after objecting during closing arguments, he failed to move for a mistrial based on instances of prosecutorial misconduct. Assuming that Parker intends to raise the same ineffectiveness of trial counsel claim here that he raised in his Rule 3.850 motion in state court, his ineffectiveness claim is sufficiently exhausted.[20] The trial court ultimately denied the Rule 3.850 motion relating to this issue, stating: "[F]ollowing a review of the record, this Court is unable to locate any argument by counsel which would rise to the level required for prosecutorial misconduct; that is 'the error committed was so prejudicial as to vitiate the entire trial.'" Resp. Ex. O at 28 (citations omitted). On Petitioner's appeal, the appellate court affirmed the denial per curiam.

---

38.

[20] To the extent that Parker has expanded the ineffectiveness claim to include new factual allegations that were not before the Rule 3.850 court, those claims are procedurally barred. <u>See</u> Response at 38. Parker has not shown both cause excusing the default and actual prejudice resulting from the bar. Moreover, he has not shown that he is entitled to the fundamental miscarriage of justice exception. Additionally, as shown in the alternative merits analysis that follows, this ineffectiveness claim lacks any merit. <u>See</u> <u>Martinez</u>, 132 S.Ct. at 1318. Therefore, Parker has not shown that he can satisfy an exception to the bar.

Assuming the appellate court affirmed the denial on the merits, there are qualifying state court decisions. Thus, the Court considers this claim in accordance with the deferential standard for federal court review of state court adjudications. After a thorough review of the record and the applicable law, the Court concludes that the state courts' adjudications of this claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Parker is not entitled to relief on the basis of this claim.

Moreover, assuming that the state court's adjudication of this claim is not entitled to deference, Parker's claim is, nevertheless, without merit. The record supports the trial court's conclusion. The remarks at issue were not improper.[21] Attorneys are permitted wide latitude in their closing arguments, and the record

---

[21] See Tr. at 194-95 (referring to the firearm that Officer Wilson found), 208 ("You can speculate about how the defendant found himself in each one of these situations, okay, but remember he was found in all these situations. So if you as a group or as an individual can come up with a reasonable explanation to explain away every one of these 11 facts [(described as "a mountain of undisputed evidence," see Tr. at 195-207)] then by all means find this defendant not guilty."), 208 ("Ladies and gentlemen, you've got to overcome that, you've got to be able to explain all of these things to a reasonable doubt, not beyond a shadow of a doubt, not beyond all doubt, but you've got to come up with a reasonable explanation for all those things.").

reflects that the trial judge instructed the jury that the attorneys were not witnesses in the case, and therefore their statements and arguments were not evidence. Tr. at 9; see Hammond v. Hall, 586 F.3d 1289, 1334 (11th Cir. 2009), cert. denied, 131 S.Ct. 917 (2011); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001) (citations omitted) (stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).  After reviewing the record, viewing the remarks in the context of the trial as a whole, and assessing their "probable impact" on the jury, see United States v. Hill, 643 F.3d 807, 849 (11th Cir. 2011), this Court is convinced that the prosecutor's comments, during his closing argument, did not result in a due process violation.[22]

Based on the record in the instant case, counsel's performance was within the wide range of professionally competent assistance. Even assuming arguendo deficient performance by defense counsel, Parker has not shown any resulting prejudice. Thus, Parker's ineffectiveness claim fails because he has not shown either

---

[22] The reversal of a conviction is warranted only when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction [or sentence] a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974))." Parker v. Head, 244 F.3d 831, 838 (11th Cir. 2001), cert. denied, 534 U.S. 1046 (2001).

deficient performance or resulting prejudice.  See Supplemental Response at 13-16.

## I. Ground Nine

As ground nine, Parker contends that appellate counsel was ineffective because she failed to raise the following issues on direct appeal: (a) the trial court erred in admitting the firearm into evidence; (b) the trial court erroneously allowed a lay witness (the evidence technician) to conduct an in-court demonstration and testify that the firearm was operational; and (c) the prosecutor, during closing arguments, misstated the law and the duty of the jury.[23]   Parker raised these claims in his state petition for writ of habeas corpus, see Resp. Ex. I, and the appellate court denied the petition on the merits, see Parker, 740 So.2d 534; Resp. Ex. K.  Thus, as there is a qualifying state court decision,[24] the Court will address this claim in accordance with the deferential standard for federal court review of state court adjudications.   After a thorough review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established

---

[23] Respondents claim that ground nine of the Second Amended Petition does not relate back to the original Petition, and therefore must be dismissed as untimely.   Response at 40-49. However, ground nine does relate back to the Petition.   See Reply (Doc. #33) at 33 (citing Petition (Doc. #1), Ground Eleven, at 70); Order (Doc. #35).

[24] Harrington, 131 S.Ct. at 785.

federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.   Thus, Parker is not entitled to relief on the basis of this claim.

Moreover, even assuming that the state court's adjudication of this claim is not entitled to deference, Parker's ineffectiveness claim is without merit.   Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland.   In order to establish prejudice, the court must review the merits of the omitted claim.   See Philmore v. McNeil, 575 F.3d 1251, 1264-65 (11th Cir. 2009) (citation omitted), cert. denied, 130 S.Ct. 1884 (2010). Appellate counsel's performance is prejudicial if "the neglected claim would have a reasonable probability of success on appeal." Id. at 1265 (citation and quotations omitted).

Parker has failed to show that appellate counsel's failure to raise these claims relating to the alleged ineffectiveness of trial counsel was deficient performance.   Even assuming arguendo deficient performance by appellate counsel, Parker has not shown resulting prejudice.   Given the record, he has not shown a reasonable probability exists that the ineffectiveness claims would have been meritorious on direct appeal, if counsel had raised them. Accordingly, Parker's ground nine is without merit since he has

neither shown deficient performance nor resulting prejudice.  <u>See</u>
Supplemental Response at 7-16.

### IX. Conclusion

Upon consideration of the foregoing, the undersigned finds
that "[u]nder the doubly deferential judicial review that applies
to a <u>Strickland</u> claim evaluated under the § 2254(d)(1) standard,
<u>see</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d
1 (2003) (per curiam)," Petitioner's ineffective assistance claims
fail.  <u>Knowles</u>, 556 U.S. at 123.  The remainder of Parker's claims
are without merit.  Accordingly, for these reasons, the Second
Amended Petition will be denied, and this case will be dismissed
with prejudice.

### X. Certificate of Appealability
### Pursuant to 28 U.S.C. § 2253(c)(1)

If Parker seeks issuance of a certificate of appealability,
the undersigned opines that a certificate of appealability is not
warranted.  This Court should issue a certificate of appealability
only if the Petitioner makes "a substantial showing of the denial
of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this
substantial showing, Parker "must demonstrate that reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542
U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484
(2000)), or that "the issues presented were 'adequate to deserve
encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S.

322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  <u>See</u> <u>Slack</u>, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Second Amended Petition (Doc. #24) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Second Amended Petition and dismissing this case with prejudice.

3.   If Parker appeals the denial of the Second Amended Petition, the Court denies a certificate of appealability.  Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions

58

report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

    4.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of January, 2013.

MARCIA MORALES HOWARD
United States District Judge

sc 9/7
c:
Gerry Lee Parker
Ass't Attorney General (Heller)